```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF RHODE ISLAND
_____
                              )
WILBERT L. RICHARDSON,        )
                              )
     Plaintiff,               )
                              )
          v.                  )    C.A. No. 18-253
                              )
CITY OF PROVIDENCE, by and    )
through its treasurer, James  )
J. Lombardi, III, alias;      )
EMILIO MATOS, alias, in his   )
individual and official       )
capacity as a Providence      )
Police officer; the STATE OF  )
RHODE ISLAND; and JOHN DOES   )
1-10, individually and in     )
their official capacities,    )
                              )
     Defendants.              )
_____)
```

## ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court is Defendant State of Rhode Island's Motion to Dismiss and for Judgment Pursuant to Rule 54(b) (ECF No. 12) ("State's Motion"). Plaintiff opposed that Motion (ECF No. 15) and the State filed a Reply (ECF No. 17). For the reasons stated herein, the State's Motion is granted.

I. Factual Background

This case arises out of the 2013 arrest and indictment of Plaintiff due to his suspected involvement in a deadly home-invasion robbery. Plaintiff claims that he was arrested despite the fact

1

that he did not match the description of the perpetrator and that the complaining witness was not credible. (Compl. ¶¶ 29-30, 37-38, ECF No. 1.) After his arrest on October 10, 2013, Providence Police officers executed a search warrant on Plaintiff's home, during which Plaintiff alleges they "found no evidence of any kind connecting [him] to the home invasion." (Id. ¶¶ 56-57.) Additionally, Defendant Matos allegedly made comments to Plaintiff's wife throughout the investigation indicating that he believed Plaintiff was innocent. (Id. ¶ 62.)

Plaintiff was held at the Adult Correctional Institution ("ACI") for approximately ten months before he received a bail hearing on July 7, 2014. (Id. ¶¶ 43-44, 71.) At the conclusion of the bail hearing, Plaintiff was ordered to be released to community confinement. He was not ultimately released, however, because, the next day, the Attorney General filed an indictment against Plaintiff for various crimes related to the home-invasion robbery. (Id. ¶¶ 71, 76.) Shortly thereafter, on July 23, 2014, Plaintiff was released to home confinement, where he remained until May 11, 2015, when the charges against him were dismissed. (Id. ¶¶ 78-79, 84.)

On May 7, 2018, Plaintiff filed the instant Complaint alleging three counts of malicious prosecution against all Defendants arising under 42 U.S.C. § 1983, the Rhode Island Constitution, and Rhode Island common law. The Complaint alleges that Defendants continued to detain Plaintiff and investigate his involvement in the home-

2

invasion robbery despite their "actual and constructive knowledge . . . that there was no probable cause to connect [Plaintiff] to this crime." (Id. ¶ 82.) Plaintiff seeks compensatory and punitive damages and attorneys' fees, a declaratory judgment that Defendants violated his constitutional rights, and injunctive relief requiring the "City and State to properly train, supervise, and discipline their agents relative to the a) constitutionally protected rights of individuals . . . b) the duty to continue to investigate where a purported eye witness identification lacks credibility; and, c) the duty to cease continued detention and prosecution" in the absence of probable cause. (Id. at 17.) Defendant State of Rhode Island ("the State") moved to dismiss the Complaint, alleging that it is not a "person" subject to suit under 42 U.S.C. § 1983 and that it is entitled to absolute prosecutorial immunity for all remaining counts.

II. Applicable Law

In ruling on a motion to dismiss, the Court must "accept the well-pleaded facts as true, viewing factual allegations in the light most favorable to the plaintiff." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

3

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)). Accordingly, in judging the sufficiency of a complaint, the Court must "differentiate between well-pleaded facts, on the one hand, and bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like, on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (1st Cir. 1998) (quotations omitted).

III. Arguments

The State argues that the Complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for three reasons. First, the State is not a "person" under 42 U.S.C. § 1983 and therefore cannot be sued under that statute. (See State's Motion 6.) Second, "Plaintiff's claim against the State is based solely on the alleged actions taken by the Department of the Attorney General while functioning as a prosecutor; such a claim cannot proceed because of absolute prosecutorial immunity." (Id. at 1.) And third, "the principles of prosecutorial independence which support [absolute prosecutorial] immunity, coupled with sensitivity to separation of powers concerns and the reluctance of the federal courts to interfere with state criminal process, counsel against any injunctive relief in these circumstances." (Id. at 10-11 (quoting Harrington v Almy, 977 F.2d 37, 42 (1st Cir. 1992).) The State also

4

asks that judgment enter in its favor pursuant to Rule 54(b), which provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

Plaintiff concedes that the State cannot be sued under 42 U.S.C. § 1983 and that Count I must therefore be dismissed as against the State. As to Counts II and III, he contends that the Rhode Island Supreme Court has not yet "squarely determined" whether prosecutorial immunity protects the State from "damages under the State Constitution or common law for malicious prosecution." (Pl.'s Mem. in Supp. of Opp'n 10, ECF No. 15-1.) In support of this point, he argues that the Rhode Island General Assembly clearly intended to extinguish prosecutorial immunity when it enacted the Governmental Tort Liability Act, R.I. Gen. Laws § 9-31-1, et seq., which eradicated sovereign immunity. (Id. at 11.)

Alternatively, Plaintiff contends that, even if the State is entitled to absolute prosecutorial immunity, such immunity would apply "only narrowly to actual prosecutorial functions" and not to the investigative actions prior to Plaintiff's indictment on July 8, 2014. (Id. at 15, 17.) He also contends that the non-prosecutorial actions of the John Doe defendants and of Defendant Matos "may be imputed to the State" and that prosecutorial immunity would not extend to those actors. (Id. at 17.) Finally, Plaintiff argues that

5

a Rule 54(b) judgment is inappropriate here because "there is simply no special or compelling reason to enter the rare and disfavored Rule 54(b) certification." (Id. at 21.)

IV. Analysis

    A. Viability of 42 U.S.C. § 1983 Claims Against the State

The parties agree that the State cannot be liable for damages or injunctive relief in an action brought pursuant to 42 U.S.C. § 1983 because the State is not considered a "person" under that statute. (See State's Motion 5-6; Pl.'s Mem. in Supp. of Opp'n 10.) Accordingly, Plaintiff's § 1983 claim against the State must be dismissed. See 42 U.S.C. §1983; Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) ("It is settled beyond peradventure . . . that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action."); Nicolas v. Rhode Island, 160 F. Supp. 2d 229, 232 (D.R.I. 2001), aff'd, 37 F. App'x 3 (1st Cir. 2002) ("[A] § 1983 suit can not be brought against a state for monetary damages or for injunctive relief since a state is not considered a 'person' as that term is defined in 42 U.S.C. § 1983. Thus, plaintiff cannot maintain a suit directly against the state.") (citations omitted).

B. Malicious Prosecution in Violation of the Rhode Island Constitution and common law.

Despite Plaintiff's contentions to the contrary, the Rhode Island Supreme Court has, on numerous occasions, "squarely determined" that absolute prosecutorial immunity protects the Attorney General from having to litigate claims of malicious prosecution that arise under the state Constitution and common law. (Pl.'s Mem. in Supp. of Opp'n 10.); see Mall at Coventry Joint Venture v. McLeod, 721 A.2d 865, 870 (R.I. 1998); Calhoun v. City of Providence, 390 A.2d 350, 356-57 (R.I. 1978); Suitor v. Nugent, 199 A.2d 722, 724 (1964). Accordingly, Plaintiff's claims for malicious prosecution arising under the Rhode Island Constitution and common law are barred by the application of absolute prosecutorial immunity. Such immunity protects the Attorney General from prosecution both as an individual and as an entity. See Calhoun, 390 A.2d at 356 ("While immunizing officials from personal liability is, of course, a separate concept from governmental immunity . . . even when the state is the defendant, recovery should be denied the injured party."). This is true both for his damages claims and his claims for injunctive and declaratory relief. See Harrington, 977 F.2d at 42 ("[T]he absolute immunity prosecutors enjoy from all civil actions arising out of their charging decisions bars any damages . . . Moreover, respect for the principles of prosecutorial independence which support such immunity, coupled with sensitivity to separation of powers concerns and the reluctance of the federal courts to

7

interfere with state criminal process, counsel against any injunctive relief . . . .").

### C. The State's Liability for Pre-Indictment Actions of Prosecutors and Actions of Other Defendants

The only remaining issues are whether the State in this case can be held liable for investigatory actions taken by prosecutors before Plaintiff's indictment on July 8, 2014, and whether the State can be held liable for the non-prosecutorial actions of Defendant Matos and the John Doe defendants. The Court finds that the Complaint does not plead facts sufficient to support these allegations.[1]

First, the Complaint does not allege any facts suggesting that any state prosecutors participated in this case prior to the bail hearing on July 7, 2014. In fact, the only facts in the Complaint implicating state actors relate to Plaintiff's detention at the ACI, testimony elicited at the bail hearing, and the filing of the indictment. (See Compl. ¶¶ 63-67, 69-72, 74-84.) Conducting the bail hearing and filing the indictment are unequivocally "core prosecutorial functions" entitled to absolute prosecutorial immunity. See, e.g., Imbler v. Pachtman, 424 U.S. 409, 430 (1976) ("We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit . . . ."). While Plaintiff's detention at the ACI does not constitute a

---

[1] It is worth noting that the State identified deficiencies in this part of Plaintiff's argument in its Reply (ECF No. 17), filed on August 14, 2018, and yet, in the intervening two months, Plaintiff has not moved to amend his Complaint to cure these deficiencies.

core prosecutorial function, it is also largely irrelevant to his claims of malicious prosecution. Except insofar as they clarify that he was detained while the allegedly malicious prosecution was ongoing, Plaintiff's allegations about his detention at the ACI are beside the point. As such, the only relevant facts pled against state actors pertain to "core prosecutorial functions" that are entitled to absolute prosecutorial immunity.

Second, the Complaint alleges no facts to support Plaintiff's argument that the State may be liable for the actions of Defendant Matos. Plaintiff's assertion that Defendant Matos "is also, for the purposes of this case, an agent of the State to the extent to [which] he was directed by and worked at the behest of the Attorney General's office" cannot withstand even them most cursory scrutiny under Twombly and Iqbal. (Pl.'s Mem. in Supp. of Opp'n 17.) At the outset, Plaintiff concedes that Defendant Matos was "an employee of the City of Providence, and obviously an agent of said City." (Id.) Moreover, the Complaint includes no facts, much less well-pleaded facts, showing that Defendant Matos was "work[ing] at the behest of the Attorney General's office." (Id.) The only facts in the Complaint that pertain to Defendant Matos mention his involvement in witness interviews, conversations with Plaintiff's wife, and one brief comment to Plaintiff after his arrest – actions clearly within the purview of his duties as an investigating police officer. (See Compl. ¶¶ 27-29, 32-33, 36-37, 52-59, 61-62, 69-70.) While it is entirely

possible that Defendant Matos was working at the behest of the Attorney General at some point during the investigation, the mere possibility is insufficient; Plaintiff must state a claim for relief that is plausible. See Iqbal, 556 U.S. at 678. He has not done so here.

Finally, the Court concludes that Plaintiff cannot maintain an action against the State based on unpled, unspecified actions of unserved and unidentified John Doe Defendants; doing so would turn the pleading standard on its head. Plaintiff includes only one allegation specifically against the John Doe Defendants:

> "On information and belief, Defendants John Does 1-10, including but not limited to Defendant City and Defendant State policy-makers and decision makers, individually and/or jointly with other Defendants, proximately caused, materially participated in, and/or were otherwise responsible for the arrest, detention, prosecution and continued detention and prosecution of Plaintiff without probable cause as complained herein."

(Compl. ¶ 91.) However, the Complaint includes no specific facts explaining what actions "State policy-makers and decision makers" may have taken that violated Plaintiff's constitutional or common law rights. (see id.) In essence, Plaintiff asks the Court to guess at what the State (or its alleged agents) may or may not have done that could serve as the basis for Plaintiff's claims. Plaintiff counters that he is not required to plead specific facts because, "at this early stage, he lacks information relative to the investigatory process and the roles of the various Defendants – both

10

known and unknown – in that process."[2] (Pl.'s Mem. in Supp. of Opp'n 19.) However, Plaintiff's contention that he should be able to engage in discovery prior to alleging a plausible claim for relief is precisely the argument that turns the pleading standard on its head. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79. Accordingly, Plaintiff's argument that the State's might possibly be liable for the non-prosecutorial actions of other defendants does not pass muster under Twombly and Iqbal.

D. Rule 54(b) Judgment

Because there is a "strong judicial policy disfavoring piecemeal appellate review," Kersey v. Dennison Mfg. Co., 3 F.3d 482, 487 (1st Cir. 1993), the First Circuit has established a two-step process for assessing whether Rule 54(b) judgment is appropriate: (1) the district court must consider whether judgment will dispose of all the rights and liabilities of at least one party as to at least one claim; and (2) the district court must carefully compare the dismissed claims with the unadjudicated claims to determine whether there is substantial overlap between the two that

---

[2] Plaintiff also claims that "he has been denied access to the grand jury transcripts and has not had the opportunity to engage in any discovery whatsoever." (Pl.'s Mem. in Supp. of Opp'n 17.) Per the State's request, the Court takes judicial notice of the fact that the State provided grand jury transcripts to Plaintiff during his underlying criminal proceeding in Providence County Superior Court on August 7, 2014. See Order at 1, State of R.I. v. Richardson, P1-14-2088B (August 7, 2014).

would hamper the equities and efficiencies of appellate review. See Credit Francais Int'l, S.A. v. Bio-Vita, Ltd., 78 F.3d 698, 706 (1st Cir. 1996).

Here, the State's Motion is based on legal arguments that are unique to it and not applicable to the remaining defendants and, as such, dismissal would resolve all claims against the State. Additionally, while the claims against the State and the claims against the other Defendants arise out of the same general set of circumstances, there is nothing to indicate that the claims so substantially overlap that entering judgment in favor of the State would hamper the equities and efficiencies of appellate review of any other claims. Accordingly, the doctrine of absolute prosecutorial immunity entitles the State to judgment as a matter of law and the Court sees "no just reason for delay" in entering that judgment. Fed. R. Civ. P. 54(b).

V. Conclusion

For the foregoing reasons, the State's Motion to Dismiss (ECF No. 12) is GRANTED and Plaintiff's claims as against the State are hereby DISMISSED with prejudice.

IS IT SO ORDERED.

/s/ WESmith
William E. Smith
Chief Judge
Date: October 30, 2018